```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                              09 CR 1068 (LAP)

 5   JUSTIN FORGENIE,

 6              Defendant.

 7   ------------------------------x
                                                New York, N.Y.
 8                                              September 26, 2016
                                                11:00 a.m.
 9

10
     Before:
11
                      HON. LORETTA A. PRESKA,
12
                                                District Judge
13

14                           APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     MICHAEL MCGINNISS
17        Assistant United States Attorney

18   ALLAN HABER
          Attorney for Defendant Forgenie
19

20

21

22

23

24

25
```

1              (Case called)
2              MR. MCGINNISS:  Michael McGinniss, for the government.
3     With me at counsel table is an intern in our office and also
4     from the Probation Office John Almanza and Florence Duggan.
5              THE COURT:  Good morning.  Where is your intern from?
6              THE INTERN:  I'm at Columbia, your Honor.
7              THE COURT:  Wonderful.  Nice to have you.
8              MR. HABER:  Allan Haber, your Honor.
9              THE COURT:  Good morning.
10             How would you folks likes to proceed here?
11             MR. MCGINNISS:  Your Honor, we are here today on a
12    sentencing.  At the prior status conference that the defendant
13    pled to Specification Four so we have proposed to proceed
14    straight to sentencing.
15             THE COURT:  All right.  I understand that there has
16    been a subsequent arrest.  What are you going to do about that?
17             MR. MCGINNISS:  Yes, your Honor.  I've been in
18    discussions with probation on this.  We understand the arrest
19    was in relation to a suspended license that has been cleared up
20    with the state.  So, we proceed just to move forward with the
21    underlying specification.
22             THE COURT:  Thank you very much.
23             Mr. Haber, would you like to speak on behalf of
24    Mr. Forgenie with respect to the sentencing issue?
25             MR. HABER:  Well, your Honor, I'm not sure.  Maybe I

1    should hear from the government on the update on this treatment
2    program because I had only a very brief conversation this
3    morning with probation.  My understanding is that the
4    government is asking for a live-in residential treatment
5    program of a long term variety, 18 months.  I'm not sure given
6    the history of this case that that's a solution to what's going
7    on here.  I know basically, the problem is that he's smoking
8    marijuana when he shouldn't be and it's creating problems in
9    his life.
10            THE COURT:  No kidding, Sherlock.
11            MR. HABER:  He's not functioning the way he should.
12   He's forgetting court dates.  That's how he got himself in
13   trouble in the first place. he's having problems in treatment.
14   Apparently, I was told that he dropped out on the end of August
15   and he didn't go back until, I guess, last week or Saturday.  I
16   don't understand why that happened or unfortunately, I did not
17   communicate with Mr. Forgenie about it.  I know that he has
18   concerns about work and about taking care of his child and his
19   expenses and that he was a little obsessed with that.
20   Although, I it did warn him that it's not about work now.  It's
21   about treatment and cleaning up your marijuana use.
22            THE COURT:  All right.  So you'll want to hear from
23   the officer about --
24            MR. HABER:  I'd like a little more detail about what's
25   going on so I can figure out what I think is an adequate

1    sentence from our perspective.
2             THE COURT:  All right.  You guys probably should have
3    done this before you got here.
4             MR. HABER:  Unfortunately, I didn't get into town
5    until two o'clock in the morning.  The trains broke down and I
6    didn't get back until last has night, but I get a different
7    story from client.
8             THE COURT:  One the officers, would you like to give
9    us a report please?
10            MR. ALMANZA:  Sure.  Mr. Forgenie's been testing
11   positive since February for marijuana.  He's continued to test
12   positive.  At one of the last appearances before your Honor we
13   advised that he was slipping off the treatment.  However, he
14   had gone back and made a commitment to go back and he was
15   going.  I recently Ed received information that he stopped --
16   The last time he went to treatment was August 31st.
17   Mr. Forgenie advises that he had the arrest in between that
18   time and now, as well as he did secure a job that I believe
19   lasted a week.  So that was prohibiting him.  And I did
20   understand that at the time that the program is during the day
21   and he was working during the day, so he couldn't make it.
22   However, I did tell him that was inexcusable.  He had
23   several -- a week that he must go.  And I believe missing for
24   almost a month's time is unacceptable especially while pending
25   sentencing on a violation specifically for marijuana use.  He

1    did go back on Saturday to reconnect with treatment.  However,
2    I'm not sure --
3              THE COURT:  I wonder if it had anything to do with the
4    Monday court date?
5              MR. ALMANZA:  It's possible.  I am convinced at this
6    point that outpatient really isn't working considering that
7    he's been going to outpatient since he tested positive in
8    February and he's continuing to test positive.  That's why
9    we're recommending a long term residential program.  So I think
10   he's continuing to be noncompliant and I really do think that a
11   custodial sentence might be warranted in this case.  However, I
12   do think he does need to deal with his marijuana use.  He did
13   complete a three month program after the last violation and he
14   completed outpatient after that.  However, he reverted back to
15   marijuana use.  So I don't think that is a long enough time to
16   really have him kick it which is what I recommend, your Honor.
17             THE COURT:  Yes.  Thank you, officer.
18             Mr. Haber?
19             MR. HABER:  Could I just speak to my client?
20             THE COURT:  Of course.
21             (Pause)
22             THE COURT:  Yes, sir.
23             MR. HABER:  Your Honor, I'm little troubled by the
24   length of time that the government feels is necessary for him
25   to be in treatment.  An 18-month program basically takes him

1  out of circulation for a long time for marijuana use which in
2  my opinion is unusual.  Usually, these long term programs are
3  more geared toward heroin addiction, cocaine habits,
4  amphetamines.  They take people with marijuana.
5              THE COURT:  OK.  But I also heard the officer say that
6  Mr. Forgenie had been in a three-month residential program
7  followed by outpatient and that does not seem to have worked.
8              MR. HABER:  I agree that he had problems when he did
9  that last time.  It's not clear to me that an 18-month program
10 in which he gets absolutely no credit for time in jail is a
11 solution to this.  He's been on three year's probation, it's
12 going on nine years now.  This is not going away.  And it's his
13 fault.  I'm not suggesting that it's anyone else's fault.  And
14 I have had that conversation with him.  But I just think it's a
15 bit much to put him in a program for that long.  Maybe the
16 Court could consider a shorter program like a six-month program
17 or an eight-month program.  An 18-month program is a struggle
18 and he has a young child at home.  I know his mother is
19 scrambling to make arrangements to try to take care of the
20 child and I know there are some custody issues as well.  So
21 it's a complicated situation.
22             THE COURT:  But not a new situation.
23             MR. HABER:  No, it's not, your Honor.  Unfortunately,
24 it's not.  And I can't disagree with the Court.  It has been a
25 problem.  I'm just not sure what the resolution should be.  I

1  think that a short term program works that an 18-month
2  commitment is just a huge commitment.  I would ask the Court to
3  consider a shorter program, maybe like a six month variety
4  live-in.
5             THE COURT:  Thank you, Mr. Haber.
6             Mr. Forgenie, would you like to speak on your own
7  behalf?  I can't hear you, sir.
8             THE DEFENDANT:  Yes, your Honor.  I have been going
9  through some issues with marijuana and stopping smoking.  I am
10 trying to maintain my sobriety right now.  I was trying to keep
11 positive things going on, so on and so forth.  And that's
12 really all I have to say, your Honor.
13            THE COURT:  Thank you.
14            MR. HABER:  The reality is, judge, that it's not like
15 he was out there doing bad things.  He was trying to work.  I
16 understand this conflicted with his treatment.  Had he gone
17 into treatment as I told him last time and he got a clean urine
18 then the Court would reconsider this.
19            THE COURT:  Totally.  But the fact is he doesn't --
20 and let us not forget, marijuana is against the law.  Let us
21 not forget that.  People seem to think it's nothing but it's a
22 term and condition and supervised release.
23            I don't mean to lecture you, Mr. Haber.  I'm actually
24 talking to Mr. Forgenie.
25            Does the government or the officer wish to be heard?

1              MR. MCGINNISS:  Just briefly, your Honor.  I think the
2     probation officer hit all the high points but at this stage we
3     have tried many different steps along the way.  We've tried
4     outpatient.  We've tried inpatient/residential and had a little
5     bit of success.  I don't think we want to take that next step
6     necessarily into a full custodial sentence when we do have a
7     possibility for a program that has worked in the past that we
8     think might work again.  So we believe that an inpatient
9     residential treatment program can help this defendant and
10    that's what we want to see so he can move forward and finish up
11    his supervised release and take that next step in his life.
12    Thank you, your Honor.
13             THE COURT:  All right.  Mr. Haber, is there anything
14    else?
15             MR. HABER:  No.  Thank you, your Honor.
16             THE COURT:  Thank you.
17             Counsel, obviously, the most weighty factors in this
18    sentencing are addressing Mr. Forgenie's drug issue and
19    teaching him respect for the law.  In order to address both of
20    those and I do recognize that the Chapter Seven guidelines
21    always were and remain advisory.
22             In order to address those issues I am contemplating
23    and I think intend to revoke Mr. Forgenie's supervised release
24    to reimpose a period -- I think I can do three years; is that
25    right?

1          MR. HABER:  Yes, your Honor.
2          THE COURT:  With a special condition of a 12 month
3  residential substance abuse program, and in addition to impose
4  a certain condition.
5          Is this any reason, counsel, why such a sentence
6  should not be imposed?
7          MR. HABER:  No, your Honor.
8          MR. MCGINNISS:  No, your Honor.
9          THE COURT:  Very well then, Mr. Forgenie.
10         THE DEFENDANT:  Yes, your Honor.
11         THE COURT:  Your supervised release is revoked.  A new
12  period of three years of supervised release is imposed.  You
13  will follow all of the normal terms and conditions of
14  supervised release including not committing another federal,
15  state or local crime; not illegally possessing a controlled
16  substance and not possessing a firearm or other destructive
17  device.
18         In addition to those and all of the other standard
19  terms and conditions of supervise release, you will begin with
20  a period of 12 months residential inpatient substance abuse
21  program.  You will comply with all of the terms and conditions
22  of the program.
23         In addition, sir, the Court imposes the search
24  condition which provides that the probation officer may search
25  your person, residence, place of business, vehicle, computer

G9QAAPORC                    Conference

devices and any other premises or device under your control upon the reasonable belief that contraband or evidence of a violation of the terms and conditions of your release can be found there.  Search must be conducted at a reasonable time and in a reasonable manner.

Failure to submit to such a search must be grounds for revoking your supervised release.  It will be your obligation to inform other residents of the premises or users of the property that they might be subject to a search under that condition.

It is my duty to inform you, sir, that unless you've waived this, you have the right to appeal this sentence and you might have the right to appeal in forma pauperis which means as a poor person with the waiver of certain fees and expenses.

Counsel, is there anything further?

MR. HABER:  Your Honor, I guess I'm concerned about the mechanics of it all.  I'm assuming probation will make arrangements for whatever program they see suitable.

THE COURT:  Officer.

MR. ALMANZA:  That's correct, judge. We'll make arrangements, secure bed space.  It usually takes about a week or two.  At this time I believe we need an order from the Court stating that.

THE COURT:  Yes, sir.  If you would submit that order when you have the details worked out, that will be fine and of

1   course you'll keep Mr. Haber informed.
2            Mr. Forgenie.
3            THE DEFENDANT:  Yes, your Honor.
4            THE COURT:  Have you had enough of this stuff yet?
5   Right.  You just need to get beyond it.  You know what you have
6   to do, sir.  You have to get over the drugs before you can do
7   anything else.  Your child needs you but needs you to be sober
8   and working.  So take advantage, sir, of the assistance that
9   probation is getting for you.  Do everything you can to
10  straighten yourself so that you can serve your child when you
11  get out.  All right, sir?
12           THE DEFENDANT:  Yes, ma'am.
13           THE COURT:  Who is the lady in the front row please?
14           MR. HABER:  His mother.
15           THE COURT:  Good morning, ma'am.
16           DEFENDANT'S MOTHER:  Good morning to you.  Your
17  Honor --
18           THE COURT:  Speak up, ma'am.
19           DEFENDANT'S MOTHER:  I don't know if I should relay
20  this to Allan but he has a court case on final custody on the
21  17th of November, final custody hearing for the child.
22           MR. HABER:  Yes, your Honor.  He has a final custody
23  hearing in family Court but if they can notify the program,
24  they'll take him out on that day.
25           THE COURT:  Officer, would you be able to take care of

```
G9QAAPORC                      Conference
```

1   that?
2           MR. ALMANZA:  Yes, absolutely.
3           DEFENDANT'S MOTHER:  Thank you.
4           THE COURT:  Anything else?
5           MR. HABER:  Nothing, your Honor.  Thank you.
6           MR. MCGINNISS:  Nothing from the government.  Thank
7   you.
8           THE COURT: All right.  Mr. Forgenie, let's get on it,
9   right?  You know what you've got to do and you don't want to
10  come back her yet again, do you?
11          THE DEFENDANT:  No, your Honor.
12          THE COURT:  All right.  Thank you.  Let's do it.
13          Thank you, counsel, for your assistance.
14          Thank you, officer.
15                              (Adjourned)
16
17
18
19
20
21
22
23
24
25